**BARRETO PEAT, INC., Plaintiff,**

v.

**LUIS A. AYALA COLON SUCRS., INC., Defendant.**

Civ. No. 88–1264 (GG).

United States District Court, D. Puerto Rico.

March 30, 1989.

---

**322**

Cobian & Ramos, and Juan A. Ramos Díaz, San Juan, P.R., for plaintiff.

José A. Sarraga, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

GIERBOLINI, District Judge.

Plaintiff, a New York corporation engaged in the sale of paper goods brought the present action for damages suffered as a result of the acts and/or omissions of defendant, a Puerto Rico corporation. Jurisdiction is invoked pursuant to 28 U.S.C. § 1332.

Pending is a motion filed by defendant alleging that the instant action is barred by the one-year limitations period provided for tort actions in Puerto Rico. Plaintiff has filed an opposition arguing that the applicable statute of limitations is the fifteen-year period for *ex contractu* actions under the Civil Code of Puerto Rico. In the alternative, plaintiff contends that even if the action complained of were a negligent act, instead of a breach of contract, plaintiff had one year from April 22, 1988 to file suit because it was then that plaintiff knew of the damage and who had caused it. Thus, plaintiff argues that since the complaint was filed on July 22, 1988, it was filed well within the one-year limitations period.[1]

A brief summary of the facts is essential. On October 12, 1986 plaintiff Barreto Peat, Inc. sold 728 reels of unbleached braskraft 100% long-fiber of virgin pine paper to Papelera Puertorriqueña, Inc. for $105,599.56 under "CIF, San Juan" terms, which paper is used as raw material in the manufacture of paper products. On even date, ocean carrier Saguenay Shipping Limited and the vessel M/V TRANSHOPE issued at the port of Salvador, Brazil to Industria de Papeis Santo Amaro, S.A., as shipper, a bill of lading covering the aforementioned cargo for carriage to the port of San Juan, Puerto Rico. On or about October 23, 1986, defendant Luis A. Ayala Colón Sucrs., Inc. (Ayala), an agent of Saguenay Shipping Limited, received the cargo which arrived on the M/V TRANSHOPE. On or around that same date, Ayala delivered the goods subject of the present controversy— which were covered by a bill of lading—to Papelera Puertorriqueña, Inc. without requesting the surrender of the bill of lading.

On July 22, 1988 plaintiff filed the present complaint alleging that the delivery of the goods to a third party without requiring the surrender of the original bill of lading amounts in effect to a conversion;

---

1. After the drafting of this opinion defendant filed a second motion for summary judgment raising essentially the same arguments discussed in the original motion and advancing an additional ground which will be addressed at the end of the present opinion.

that plaintiff has not been able to collect the sum owed to it for those goods or to retain the goods for itself, and that defendant is liable to plaintiff due to its acts and omissions.

■ Under Puerto Rico law, a person who causes damage to another through fault or negligence shall be liable in damages. Tit. 31 P.R.Laws Annot. § 5141. Conversion in Puerto Rico is an intentional tort. It is merely a form of the fault (culpa) described in Section 1802 of our Civil Code (1930 ed.). *Federal Ins. Co. v. Banco Popular de Puerto Rico*, 750 F.2d 1095, 1100 (1st Cir.1983). The Supreme Court of Puerto Rico has defined conversion as: "not the simple acquisition of another's property, but the malicious and wrongful privation of the ownership rights, the illegal exercise, or the assumption of authority over another's property, thereby depriving the lawful owner or possessor, permanently or for an indefinite period, of its use and enjoyment." *Hull Dobbs Co. v. Superior Court*, 81 P.R.R. 214, 222 (1959); *Heirs of Sorbá v. Viñas*, 49 P.R.R. 31 (1935). The facts as alleged in the complaint are to the effect that defendant illegally exercised or assumed authority over plaintiff's property, thereby depriving plaintiff of its use. Thus, the alleged acts and/or omissions of the defendant could give rise to a finding of conversion which is regulated by 31 L.P.R.A. § 5141.

The applicable statute of limitations governing the prescription of tort actions, 31 L.P.R.A. § 5298, provides that tort actions shall prescribe one year from the last tortious act. It appears from the record, that the alleged tortious act was on or about October 23, 1986—when Ayala delivered the goods to Papelera Puertorriqueña, Inc. without requiring the surrender of the original bill of lading—and the complaint was not filed until July 22, 1988. Clearly, the action was brought after the one-year limitations period had run.

Plaintiff claims that if we considered the present action as one sounding in tort, it had one year from the date of April 22, 1988, to commence an action because it was then that it knew of the damage and who

had caused it. Plaintiff contends that at a meeting on April 22, 1988 it discovered the name of the defendant employee who allowed delivery of the goods to Papelera Puertorriqueña, Inc.

The one-year statute of limitations for torts starts to run on the date plaintiff became aware of the damage and who caused the damage. However, if the lack of awareness was due to negligence or carelessness of the plaintiff, then he shall be responsible for the consequences of such carelessness. Under these circumstances, the accrual of plaintiff's cause of action shall not be delayed. *Colón Prieto v. Géigel*, 115 Dec.P.R. 232 (1984).

Although the Civil Code does not specifically address the issue of when the injured party should have known of the injury, a well-known Spanish law commentator, L. Díez Picazo in his treatise *La Prescripción en el Código Civil*, Ed. Bosch, Barcelona, 1964, p. 240 states that generally the victim is presumed to have knowledge of injury at the time of the tortious act and in any case, the victim has the burden of proving that he obtained knowledge at a later date. *See also Rivera Encarnación v. E. L. A.*, 113 Dec.P.R. 383 (1982). On this same subject R. de Angel Yaguez, another Spanish law commentator in his treatise *Lecciones sobre Responsabilidad Civil*, Univ. de Deusto, Bilbao, 1978, p. 138, has expressed the following:

> The eventual allegation of lack of knowledge of the injury should be judged ... in light of the excusability or inexcusability of [the victim's] ignorance ... (Our translation).

Nevertheless, the victim should prove that a prudent and reasonable man, under those particular circumstances, could not have discovered the injury until the moment that he did. *See* Herminio M. Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico*, Chapter VIII, § 8.06 p. 440 (2d ed. JTS 1986).

Plaintiff has failed to shoulder that burden. The negligent acts and/or omissions attributed to the defendant occurred on or about October 23, 1986, the date on which the goods were delivered to a third party

allegedly without requiring the surrender of the original bill of lading. Plaintiff has not adduced any reason why by making reasonable inquiries and in the exercise of due diligence it could not have become aware of the injury within the one-year limitations period. Thus, we find that plaintiff's cause of action which was filed more than one year after the alleged negligent act is barred by the applicable one-year limitations.

■ As an alternative ground for dismissal, defendant contends that this action is also time barred under the limitations period provided by Section 1303(6) of the United States Carriage of Goods by Sea Act of April 16, 1936, 46 U.S.C.App. § 1303(6) (COGSA). Section 1303(6) provides in the pertinent as follows:

> In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.

By its own terms, COGSA applies to shipments such as the one in the instant case, which transfer goods between the United States and a foreign port. 46 U.S. C.App. § 1312. Thus, it imposes a one-year statute of limitations on suits against the carrier and its agents. *Insurance Co. of North America v. Puerto Rico Marine*, 768 F.2d 470 (1st Cir.1985), *cert. denied*, 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986).

Defendant contends that it acted as the stevedoring contractor who discharged and delivered the cargo object of this action. Although COGSA does not, by its own terms, impose a one-year limitations period on suits against stevedores, defendant argues that the bill of lading expressly makes applicable the provisions of COGSA.

Bill of Lading No. 1 dated October 12, 1986, issued by Saguenay Shipping Limited, Montreal, Canada, constitutes the contract of carriage between the ocean carrier and the shipper, Industria de Papeis Santo Amaro, S.A. and is subject to the provisions of COGSA.[2]

Clause 17 of the contract of carriage provides:

> **Exemptions and Immunities of all Servants and Agents of the Carrier:** It is hereby expressly agreed that no servant or agent of the Carrier (including every independent contractor from time to time employed by the Carrier) *shall* in any circumstances whatsoever be under any liability whatsoever to the Merchant for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment and, but without prejudice to the generality of the foregoing provisions in this clause, *every exemption, limitation, condition and liberty herein contained and every right, exemption from liability defense and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled hereunder shall also be available and shall extend to protect every such servant or agent of the Carrier acting as aforesaid* and for the purpose of all the foregoing provisions of this Clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be his servants or agents from time to time (including independent contractors as aforesaid) and all such persons shall to this extent be or be deemed to be parties to the contract in or evidenced by this Bill of Lading. (Emphasis supplied)

Clearly, the bill of lading extends to defendant, who acted as a stevedoring contractor, all the statutory and contractual limitations and exonerations from liability that would be available to the carrier, including the one-year limitations period for filing suit. *See B. Elliott (Canada), Ltd. v. John T. Clark & Son, Inc.*, 704 F.2d

---

**2.** 46 U.S.C.App. § 1300 provides:
[T]hat every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this Act.

1305, 1309 (4th Cir.1983). Thus, since the delivery of the cargo took place on or about October 23, 1986, and it was not until July 22, 1988 that plaintiff filed the present action for the alleged misdelivery, plaintiff's action is time barred.

Wherefore, in view of the above, defendant's motion to dismiss is hereby GRANTED and the present action is dismissed.

The Clerk shall enter judgment accordingly.

SO ORDERED.